DAVID G. LARIMER, United States District Judge
This action was brought by four property owners in Corning, New York ("Corning, NY"), against Corning Incorporated ("Corning"), asserting claims under the Comprehensive Environmental, Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq. , *90 and under New York state law. In the original complaint, plaintiffs sought damages and response costs due to alleged contamination by hazardous substances of property owned by plaintiffs. The complaint was ostensibly brought on behalf of a class of owners, occupants and residents of an area identified in the complaint as the "Houghton Plot."
On December 21, 2018, the Court issued a Decision and Order ("2018 Decision") granting defendant's motion to dismiss all but plaintiffs' first cause of action, which seeks response costs under CERCLA.[1] The Court also stayed that cause of action pending further order of the Court, based on the pendency of a remedial process taking place pursuant to administrative proceedings before the New York State Department of Environmental Conservation ("DEC"). 351 F.Supp.3d 342 (W.D.N.Y. 2018).
Plaintiffs have now filed a motion for leave to file an amended complaint, or in the alternative for an order entering final judgment on the claims that were dismissed by this Court's 2018 Decision. For the reasons that follow, the motion is denied.
DISCUSSION
I. Motion for Leave to Amend
In their motion for leave to amend, plaintiffs seek, as they put it, "to restate their negligence claim to add additional allegations, including failure to warn and breach of duties, ... to eliminate any claims for injunctive relief, and to delete the other common law claims that have been dimissed by this Court." Plaintiffs' Mem. (Dkt. # 28-4) at 2. Plaintiffs' proposed amended complaint, then, would retain their CERCLA claim, and restate and re-assert their negligence claim.
Rule 15(a)(2) directs a court to "freely give leave [to amend a complaint] when justice so requires." See Foman v. Davis , 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The rule is not meant simply to give plaintiffs a second bite at the apple, however. Although "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint," Corsello v. Lincare, Inc. , 428 F.3d 1008, 1014 (11th Cir. 2005) (emphasis added), that liberal standard is not meant to encourage a "wait-and-see approach," where the pleader in effect lets the court identify the deficiencies in the pleading, and only then attempts to correct them. See Adbul-Mumit v. Alexandria Hyundai, LLC , 896 F.3d 278, 292 (4th Cir. 2018) ("The district court does not serve as a legal advisor to the parties, nor is a dispositive motion a 'dry run' for the nonmovant to 'wait and see' what the district court will decide before requesting leave to amend"); see also Kader v. Sarepta Therapeutics, Inc. , 887 F.3d 48, 61 (1st Cir. 2018) (district court did not abuse its discretion where plaintiffs waited until after court's ruling on motion to dismiss before seeking leave to amend); Association of Victims of Med. Malpractice v. Torres-Nieves , 316 F.R.D. 51, 55 (D.P.R. 2016) (allowing plaintiffs to restate existing claim, but making clear that "the Court will not allow the amended complaint to resurrect previously dismissed claims").
There is also authority that "unless otherwise specified, a dismissal for failure *91 to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice." McLean v. U.S. , 566 F.3d 391, 396 (4th Cir. 2009) (quoted in Beckworth v. Bizier , 48 F.Supp.3d 186, 198 (D.Conn. 2014)). See also Sanders v. Sullivan , 900 F.2d 601, 605 (2d Cir. 1990) (absent compelling reasons, a court adheres to its own decision at an earlier stage of the litigation); VanBrocklen v. Dep't of Homeland Sec. , No. 1:12-CV-003 (GTS/ATB), 2012 WL 2873373, *3 (N.D.N.Y. July 12, 2012) (a dismissal pursuant to Rule 12(b)(6) is presumed to be with prejudice unless otherwise specified).
At the same time, the Court recognizes that it has some discretion to allow repleading, "if justice so requires." Fed. R. Civ. P. 15(a). See Preece v. Cooke , No. 13-cv-03265, 2014 WL 6440406, at *1 (D. Colo. Nov. 17, 2014) (stating that "[a] dismissal under Rule 12(b)(6) is a determination on the merits ... and presumptively is entered with prejudice," but that a case presenting "a scenario in which ... [the plaintiff] might be able to replead to state a viable claim if the facts were made clearer or expanded in some way" may be a candidate for dismissal without prejudice). Having reviewed plaintiffs' proposed amended complaint, however, I see no basis here to allow plaintiffs leave to amend.
Although Rule 15(a) sets forth a liberal standard for allowing amendment, the court has discretion to deny such a motion when the amendment would be futile, see Foman , 371 U.S. at 182, 83 S.Ct. 227. "An amendment to a pleading is futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Lucente v. IBM Corp. , 310 F.3d 243, 258 (2d Cir. 2002). In other words, a proposed amended complaint must contain "enough facts to state a claim to relief that is plausible on its face."See Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also Ruffolo v. Oppenheimer & Co. , 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend").
In the case at bar, plaintiffs' proposed amended complaint does little but add a few conclusory allegations that at some point, defendants "knew or should have known" that the materials it had deposited in the Houghton Plot contained hazardous substances. Such allegations are insufficient to state a valid claim. See Wells Fargo Bank, N.A. v. Renz , No. C 08-2561, 2011 WL 97649, at *4 (N.D.Cal. Jan. 12, 2011) (allegation that defendant "knew or should have known that its product, when operated as intended, caused contamination to the environment" failed to state a claim); see also Krainski v. Board of Regents of Nevada Sys. of Higher Educ. , 616 F.3d 963, 969 (9th Cir. 2010) (dismissal proper where plaintiff "merely alleged in a conclusory fashion that officers 'knew, or should have known' " of constitutional violation).
In their reply brief, plaintiffs have cited old newspaper articles and other documents to show that it has long been known that certain substances are hazardous to health, and that some of those substances are byproducts of glassmaking. These include a 1923 article about a man who was fatally struck by lightning while driving a team of horses to the Houghton Plot, an anonymous 1897 newspaper comment complaining about the carelessness of glassmakers in handling arsenic, and a scholarly article stating that arsenic's poisonous qualities were well known to the sixteenth-century Borgia family. Whatever interest these might hold for those with an interest in glassmaking, local history, or the Italian Renaissance, they do not warrant allowing *92 plaintiffs to go forward with their proposed negligence claim.
Plaintiffs' proposed amended complaint also alleges that "[b]y the 1980s," it was "generally known" that ash generated as a byproduct of glass manufacturing contained high levels of certain hazardous substances. See Dkt. # 28-2 ¶ 163. Plaintiffs similarly allege that "[b]y the 1980s, Corning ... knew or should have known that the Fill it [had] deposited" contained hazardous substances, and that Corning negligently failed to promptly warn residents and landowners of the danger. Id. ¶¶ 164, 169-71.
As stated, though, where a defendant's knowledge of some fact or circumstance is an element of a tort claim, a bare assertion that a defendant "knew or should have known" of that fact or circumstance is insufficient to state a claim. See, e.g., Maund v. County of Erie , No. 17-CV-778, 2019 WL 955355, at *4 (W.D.N.Y. Feb. 26, 2019) (plaintiff's "threadbare allegation that the County knew or should have known that the two caseworkers lacked the appropriate temperament and psychological makeup is conclusory and insufficient to survive a motion to dismiss"); Jordan v. Chevron U.S.A., Inc. , No. H-18-3496, 2018 WL 5723148, at *5 (S.D.Tex. Nov. 1, 2018) (dismissing negligence claim arising out of collapse of ceiling beam where complaint "d[id] not allege facts sufficient to conclude that Chevron knew or should have known of the danger the ceiling beams posed").
Plaintiffs need not plead evidence, but that does not mean they can proceed on the basis of conjecture, based on a few scraps of information, or broad, conclusory allegations about what was "generally known" in the past. They must allege facts which, if proven, would support a reasonable inference that defendants were culpably negligent. In other words, as stated by the United States Supreme Court, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible ...." Twombly , 550 U.S. at 570, 127 S.Ct. 1955. They have not done so, with respect to the negligence claim.
In its 2018 Decision, this Court noted that plaintiffs had simply alleged that "at some point after the materials were deposited, the contamination was discovered." 351 F.Supp.3d at 356. Plaintiffs' additional allegations in the proposed amended complaint add little of substance to that, and do not correct that basic defect. There has never been any dispute that Corning eventually became aware that materials it deposited many years earlier on the Houghton Plot contained hazardous substances. As the Court stated before, however, "[t]here are no facts alleged that would support an inference that Corning knew of the contamination but failed to disclose it, to plaintiffs or anyone else. Absent such allegations, the court cannot simply 'fill in the blanks' to supply what is missing ...." 351 F.Supp.3d at 357 (citing cases). The bare allegation that Corning knew of the contamination long before it did anything about it amounts to nothing more than the "formulaic recitation of the elements of a cause of action," which "will not do" to state a facially valid claim. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ).
In a similar vein, plaintiffs' allegation in the proposed amended complaint that "[a]s the owner of the Ash Dump Easement, Corning had an enhanced duty to the owners" of the subject properties, Dkt. # 28-2 ¶ 162, is nothing more than a legal conclusion. While courts in New York have recognized the concept of an "enhanced duty" in certain narrow circumstances, see, e.g., In re Livent, Inc. Noteholders Sec. Litig. , 151 F.Supp.2d 371, 439 (S.D.N.Y. 2001)
*93 (stating that courts recognize "an enhanced duty to obtain available information material to investment decisions"), simply reciting those words in a complaint is not enough. See Allmond v. Bank of America , No. 07-cv-186, 2008 WL 2445652, at *3 (M.D.Fla. June 16, 2008) (finding that plaintiff could not "state[ ] a claim merely by quoting the 'terms of art' that encompass a given legal theory") (quoting Twombly , 550 U.S. at 553, 127 S.Ct. 1955 ). In short, this is nothing more than "a legal conclusion couched as a factual allegation," which the court is not bound to accept in assessing the sufficiency of the proposed amended complaint. Twombly , 550 U.S. at 555, 127 S.Ct. 1955.
II. Motion for Entry of Final Judgment
In the 2018 Decision, the Court dismissed all of plaintiffs' state-law claims (Claims 2 through 6), and stayed the first cause of action under CERCLA until after the DEC-ordered remediation has been fully implemented. 351 F.Supp.3d at 361. Plaintiffs now seek, in the alternative to the filing of their proposed amended complaint, an order entering final judgment on their state-law claims.
Plaintiffs' motion is based on Rule 54(b) of the Federal Rules of Civil Procedure. That rule "empowers the district court to enter a final judgment on fewer than all of the claims in the action, but 'only upon express determination that there is no just reason for the delay.' " Harriscom Svenska AB v. Harris Corp. , 947 F.2d 627, 629 (2d Cir. 1991) (quoting Fed. R. Civ. P. 54(b) ).
The court's power to enter final judgment under Rule 54(b) is not to be exercised routinely. Rather, "[a] district court's discretion under Rule 54(b) to [enter] partial final judgment in advance of final adjudication of all claims should be 'exercised sparingly' and 'only if there are interests of sound judicial administration and efficiency to be served, or in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.' " Helios Int'l S.A.R.L. v. Cantamessa USA, Inc. , 23 F.Supp.3d 173, 190 (S.D.N.Y. 2014) (quoting Harriscom Svenska , 947 F.2d at 629 ). These principles are intended to preserve the "historic federal policy against piecemeal appeals ...." Curtiss-Wright Corp. v. General Elec. Co. , 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) ).
In determining whether Rule 54(b) certification would serve judicial economy, courts "consider such factors as whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.' " Novick v. AXA Network, LLC , 642 F.3d 304, 311 (2011) (quoting Curtiss-Wright Corp. , 446 U.S. at 8, 100 S.Ct. 1460 ) (alteration and emphasis omitted).
The Second Circuit has "repeatedly noted that the district court generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated." Id. ; accord Harriscom , 947 F.2d at 629. "Claims are generally treated as separable within the meaning of Rule 54(b) 'if they involve at least some different questions of fact and law and could be separately enforced, or if different sorts of relief are sought.' " Baumgarten v. Suffolk County , No. 12-CV-0171, 2014 WL 4175793, at *3 (E.D.N.Y. Aug. 19, 2014) (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc. , 106 F.3d 11, 21 (2d Cir. 1997).
*94 In the case at bar, the dismissed claims are closely related to the remaining CERCLA claim. They are premised on different legal theories, but they all seek similar relief arising out of the contamination of the subject property.
This case thus stands in sharp contrast to, for example, State of New York v. AMRO Realty Corp. , 936 F.2d 1420 (2d Cir. 1991), in which the Court of Appeals held that a judgment which completely and finally disposed of the CERCLA defendants' third-party claims against insurers was appropriate for Rule 54(b) certification. No similar circumstance is presented here. This case involves a single set of facts, and the same parties.
Plaintiffs do not appear to dispute that all their claims are closely related to each other. Their chief justification for the requested Rule 54(b) certification is not that the claims are factually distinct, but that plaintiffs do not want to wait years (i.e. , until the DEC-ordered remediation is completed) to obtain relief. See Plaintiffs' Mem. (Dkt. # 28-4) at 10 (stating that in light of the Court's stay of the CERCLA claim, "it will likely be five years or more until this lawsuit is finally resolved").
As explained in the Court's 2018 Decision, however, "to allow plaintiffs to pursue such claims now, while the remedial process moves forward, would accomplish little other than to dissect this case into piecemeal litigation, with consequent delay and multiplicitous appeals ...." 351 F.Supp.3d at 360. Though the Court said that with respect to defendants' motion to stay plaintiffs' CERCLA claim for response costs, the same principle holds true as to their state-law claims.
Undoubtedly, many litigants who have received an unfavorable decision on fewer than all of their claims would like to take an immediate interlocutory appeal, in the hopes of obtaining a quick reversal or remand. But that is not the rule in federal court. Rule 54(b) certification is confined to narrow circumstances, for good reason. That reason is to "ensure[ ] that the court of appeals is not forced to review identical facts or identical legal issues in multiple appeals," thereby "ensur[ing] the efficient and orderly administration of judicial resources." National Asbestos Workers Med. Fund v. Philip Morris, Inc. , 71 F.Supp.2d 139, 154 (E.D.N.Y. 1999). That is why, in federal court, "interlocutory appeal is an exception to the general rule that appellate review must await final judgment." Nutraceutical Corp. v. Lambert , --- U.S. ----, 139 S.Ct. 710, 716, 203 L.Ed.2d 43 (2019).
In the 2018 Decision, the Court stated that "[i]t makes eminent sense to stay the claims for response costs and other damages until after the DEC-ordered remediation has been implemented." 351 F.Supp.3d at 361. The same holds true as to plaintiffs' claims under state law. Even if the Court were to grant certification, and its dismissal of the state-law claims were reversed on appeal, plaintiffs' damages, if any, could not be fully determined until after the remediation is completed. While plaintiffs contend that they have already sustained, and continue to sustain damages, the fact remains that the DEC has directed a process of remediation. Until that is completed, it is impracticable, at the very least, to attempt to assess plaintiffs' damages. No good purpose would be served by allowing an immediate appeal from the Court's dismissal of plaintiffs' state-law claims.
"The decision to deny Rule 54(b) certification based on judicial efficiency is a discretionary one that often turns on the court's assessment of the circumstances and posture of the particular case."
*95 Verizon New York Inc. v. Village of Westhampton Beach , No. CV 11-252, 2014 WL 12843520, at *9 (E.D.N.Y. Dec. 22, 2014). See, e.g., Travelers Indem. Co. v. Northrop Grumman Corp. , No. 12-CV-3040, 2014 WL 2111698, at *1-*2 (S.D.N.Y. May 8, 2014) (concluding that Rule 54(b) certification of certain adjudicated claims "would considerably lengthen and complicate this litigation," and that it would be preferable "to present the Second Circuit with a single consolidated appeal"); Vaad L'Hafotzas Sichos, Inc. v. Kehot Publication Society , No. 10 CV-4976, 2014 WL 1026592, at *1 (E.D.N.Y. Mar. 17, 2014) (stating that there were "common issues" between plaintiff's counterclaims and issues remaining to the be litigated, and that even if that were not the case, "a Rule 54(b) certification [of the counterclaims] would require two separate panels of the Second Circuit to familiarize themselves with the rather tortured history of the parties' dispute"). Having made that assessment here, I conclude that Rule 54(b) certification is unwarranted.
CONCLUSION
Plaintiffs' motion (Dkt. # 28) for leave to file an amended complaint, or in the alternative for entry of final judgment under Fed. R. Civ. P. 54(b), is in all respects denied.
IT IS SO ORDERED.

CERCLA does not explicitly define "response costs," but it does provide that a polluter shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). The term is widely used by the courts to mean, in general, costs necessitated by a release of hazardous substances.